IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHERRIKA BELLAMY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action File No.: |
| | ) | |
| ANTAVIUS M. WEEMS; | ) | |
| LAMAR J. WHITE | ) | |
| BARBARA DUFFY; | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| FULTON COUNTY | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| BOARD OF COMMISSIONERS | ) | |
| FOR THE HOUSING AUTHORITY | ) | |
| OF FULTON COUNTY | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| *Defendants.* | ) | |

———————————————

## COMPLAINT FOR MONETARY DAMAGES

Plaintiff Sherrika Bellamy files this Complaint against the named

Defendants in the above-styled action, using section 1983 as the vehicle to

vindicate her constitutional rights under the First Amendment of the U.S.

Constitution; Ms. Bellamy also seeks to uphold her rights under Georgia's Whistleblower statute and under common law and statutory theories of simple negligence.

## **INTRODUCTION**

Ms. Bellamy has shown unyielding courage, in an effort to ensure the under-served populations of Fulton County obtain adequate housing and also in an effort to ensure that the valuable employes who commit their lives to this goal are not bullied, harassed and treated unlawfully by the Defendants. A usual with persons who possess out-sized egos combined with a penchant to engage in unlawful acts, Ms. Bellamy lost her job the moment she reported to authorities and other persons Defendants' misuse/misappropriation of funds and violations of by-laws and policies designed to protect against corruption. The indignities perpetrated by these Defendants, against Ms. Bellamy, also included the low and petty act of not informing Ms. Bellamy of her termination; instead, Ms. Bellamy found out through staff members, property agents, and other housing authorities—all of whom had been informed about Ms. Bellamy's termination.

## JURISDICTION AND VENUE

### 1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Ms. Bellamy's claims occurred in this District and Division and (2) Defendant is incarcerated and housed in this District and Division.

## PARTIES

### 2.

**Plaintiff Sherrika Bellamy.** At all times relevant to this Complaint, was a citizen of Georgia, residing in Fulton County, who worked with the Housing Authority of Fulton County (HAFC).

### 3.

**Defendant The Housing Authority of Fulton County**. The Housing Authority of Fulton County (HAFC) was created in 1972 by Fulton County legislation to address the need for decent, safe, sanitary, and affordable housing in unincorporated Fulton County. HAFC is subject to enabling legislation authorizing the Housing Authority's creation and must comply with all applicable local, state, and federal laws, including the specific HUD rules and regulations governing public housing authorities. By administering and

developing housing opportunities for families of low to moderate incomes, the

Authority provides not only housing stock but also essential self-sufficiency

skills crucial to assisting residents in moving up and out of public housing.

A nine-member board of commissioners appointed by the Fulton County Board

of Commissioners provides guidance. In keeping with its strong belief in resident

participation and empowerment, two members of the Board are residents of the

Authority.

4.

**Defendant The Boad of Commissioner for HAFC**. There are nine total

members of the Boad of Commissioner for HAFC (HAFC Commissioners). Seven

of these nine HAFC Commissioners are each appointed by a member of the

Board of Commissioners for Fulton County, which has seven members.  Said

Differently, each of the seven members of the Board of Commissioners for Fulton

County has the authority to appoint one person to the Board of Commissioner

for HAFC. The reason there are 9 total HAFC Commissioners is because after

seven commissioners are appointed by Fulton County Commissioner, two more

Commissioners are elected and appointed as "Resident Commissioners"—for a

total of nine HAFC Commissioners.

5.

**Defendant Antavius M. Weems**. At all times relevant, Mr. Weems was an agent of Fulton County, and a licensed attorney in the State of Georgia and thus all applicable and ethical rules governing attorneys practicing in Georgia applied to Mr. Weems. Also, at all times relevant, Mr. Weems was the Chair of the Board of Commissioner of HAFC. Chairman Weems was appointed to the Board of Commissioners of HAFC by Fulton County Commissioner Natalie Hall.

Upon information and belief Chairman Weems discussed the termination of Ms. Bellamy prior to voting in favor of her termination, and during these discussions, Commissioner Hall expressed to Mr. Weems her approval and desire for Ms. Bellamy's employment to be terminated. (See Fed R. Civ. P. 11, reasoning that contentions can be made in a Complaint "when the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.") At all times relevant, Mr. Weems had the authority to vote and recommend the termination of Ms. Bellamy as Chairman of HAFC's Board of Commissioners.

6.

**Defendant Lamar J. White**. At all times relevant, Mr. White was Vice-Chair of HAFC's Board of Commissioners. Vice-Chairman White was  appointed by Fulton County Commissioner Marvin S. Arrington Jr to HAFC's Board of Commissioners. Upon information and belief Vice-Chairman White discussed the termination of Ms. Bellamy with Commissioner Arrington Jr, prior to voting in favor of her termination, and during these discussions, Commissioner Arrington expressed to Mr. White his approval and desire for Ms. Bellamy's employment to be terminated. (See <u>Fed R. Civ. P.</u> 11, reasoning that contentions can be made in a Complaint "when the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.") At all times relevant, Mr. White had the authority to vote and recommend the termination of Ms. Bellmay as Chairman of HAFC's Board of Commissioners.

7.

Defendant Barbara Duffy. . At all times relevant, Ms. Duffy was Member of HAFC's Board of Commissioners. Ms. Duffy was  appointed by Fulton County Commissioner Bob Ellis to HAFC's Board of Commissioners. Upon information and belief Ms. Duffy discussed the termination of Ms. Bellamy with Commissioner Ellis prior to voting in favor of her termination, and during these

discussions, Commissioner Ellis expressed to Ms. Duffy his approval and desire

for Ms. Bellamy's employment to be terminated. (See <u>Fed R. Civ. P.</u> 11, reasoning

that contentions can be made in a Complaint "when the factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery.")

At all times relevant, Ms. Duffy had the authority to vote and recommend the

termination of Ms. Bellamy as a voting member of HAFC's Board of

Commissioners.

## <u>STATEMENT OF FACTS</u>

### A.    **About Ms. Bellamy**

8.

Ms. Bellamy was born in Bloomington, IL, in 1980.

9.

Ms. Bellamy grew up in a two parent household, her mother worked as a

janitor, and her father worked in a warehouse.

10.

Ms. Bellamy left high school in her junior year because she had been

suffering multiple traumas that caused negative socio-physical effects; yet, she

continued her education, soon thereafter earning her GED, while working at

McDonalds.

11.

 After earning her GED,  Ms. Bellamy enrolled in junior college but had to leave after one year because of financial problems, but she continued to work, this time gaining employment at the Office of Residential Life as Supervisory Secretary Trainee II at Illinois State University. Ms. Bellamy went from that job to working for the Illinois government in its Department for Rehabilitation as a case coordinator.

**B**.    **Ms. Bellamy begins working with housing initiatives for those in need**

12.

In 2010, Ms. Bellamy began her first job with respect to helping the under-served populations gain adequate housing; Ms. Bellamy worked with the Bloomington, Illinois Housing Authority as a case worker for section 8 applicants and residents. While performing excellent in this role, yet having never lived outside of Springfield, IL, while also having heard positive praises about Atlanta in terms of opportunities for African-Americans-- Ms. Bellamy move to Atlanta.

13.

Upon arrival Ms. Bellamy quickly gained employment at Captain D's and Walgreens to provide for herself; however, almost immediately, in 2011, she became part of the Dream Team for HAFC, as a case worker occupancy

specialist, to clean up compliance issues regarding the section 8 housing
program.

14.

Based on her performance with the Dream Team, HAFC offered Ms.
Bellamy a full-time position in the Compliance Department, where she worked
on fraud issues, auditing issues, and training issues for the section 8 program;
Ms. Bellamy remained in this role for approximately 4 years.

15.

In April 2015, Ms. Bellamy left HAFC, taking a higher-paying position
with the Jonesboro Housing Authority, where she became an assistant manager
for the Housing Choice Voucher Program (HCVP), and in this role Ms. Bellamy
worked with nearly all departments.

16.

As her reputation for excellence grew, HAFC (through its then Executive
Director Lolita Grant) requested Ms. Bellamy to return to HAFC and she did,
returning as the HCV Manager, Section 8 (overseeing all of section 8), reporting
directly to the Deputy Executive Director.

17.

Ms. Bellamy remained at HAFC until her unlawful termination on May 16,
2024.

**C.**     **Ms. Bellamy's demonstrable qualifications related to the issues she blew the whistle about**

18.

From 2010- present, Ms. Bellamy acquired a demonstrable skill set which has permitted her to be an authority on multiple issues for which she blew the whistle.

19.

Ms. Bellamy is a three times certified occupancy specialist (HUD Rules and Regulations) through NAN MCKAY.

20.

Ms. Bellamy has certifications in executive management from NAN MCKAY; in program management (NAN MCKAY); in financial management (NAN MCKAY); in tax credit (NAN MCKAY); in fair housing; in supervisor and management training (NAN MCKAY).

21.

 Ms. Bellamy is also SEMAP certified and VMS certified.

22.

NAN MCKAY is the top leading continuing education and educational authority on HUD rules, regulations, policies and housing laws.

D.    **Facts related to retaliation for exercising free speech and whistleblowing**

    1.    **Ms. Bellamy files an EEOC Charge against Chairman Weems in February of 2024 and complains to HUD and HAFC Commissioners**

23.

A February 16, 2024 email from Ms. Bellamy to then Executive Director of HAFC documents the fact that Ms. Bellamy filed an EEOC complaint against Chairman Weems. Upon information and belief, Chairman Weems received knowledge of this Complaint within 24 hours of this email.

24.

The next day February 17, 2024, Ms. Bellmay sent an email titled "Urgent/Staff harassment/EEOC Complaints/Board of Commissioners" and this email was addressed to multiple HAFC Commissioners, including Barbara Duffy, (a decisionmaker regarding Ms. Bellamy's termination), as well as HUD officials, along with Ed Pittman. In this email, Mr. Bellamy well chronicled Defendant Weems violations of HAFC By-Laws by, inter alia, involving himself in day-to-day operations, noting that HAFC staff were in fear of their job security because of Chairman Weems's conduct.

25.

Regarding the prohibition of Defendant Weems or any HAFC Commissioners from being involved in day-to-day operations, the By-Laws for

HAFC are very clear that "Commissioners are **not** provided with the authority to engage in the daily operations of the Housing Authority. Such intervention is considered a conflict of interest.  HUD oversight **provides for the removal of any Board Member** that is considered to be in violation of this policy.

26.

Keeping in mind said prohibition against being involved in day-to-day operations, see the enclosed anonymous letters, in addition to the email by Ms. Bellamy, regarding Mr. Weems's violation of this governing by-law.

27.

Ms. Bellamy's February 17, 2024 email chronicles a litany of unlawful conduct from misuse of funds to forced unlawful hirings, to the HAFC's General Counsel, P. Andrew Patterson, receiving payment without a required contract, and more. This email was discussed and read by all the Board of Commissioners including the Defendants.

28.

A significant issue addressed in the February 17, 2024 email is the fact that numerous staff wrote confidential complaints about Defendant Weems, and these complaints were delivered to attorney P. Andrew Patterson in a sealed envelope prior to a board meeting of the HAFC Commissioner; the letters were

given to Defendant Weems, who was seen with them and also very upset about the letters.

**E.    Weemes expressed his desire to terminate Ms. Bellamy after her email, EEOC Charge, and the anonymous complaint letters.**

29.

Then Executive Director Tanray Garcia exposed Defendant Weems within an April 21, 2024 email to, inter alia, HAFC Commissioner Barbara Duffy (who was a decision maker regarding the termination of Ms. Bellamy's employment).

30.

In Ms. Gracia's April 21, 2024 email, she starts out by saying "Weems never had a problem with my work, until I refused to do his unethical bidding. After the February board meeting, Chairman Weems did hearings and came into my office afterwards. I had to endure over **3 hours** 4:35pm to 7:58pm **of threats, and blackmail**." Ms. Garcia goes on to say that Defendant Chairman Weems demanded to know which employees wrote which anonymous complaints about him.

31.

In that same April 21, 2024 email, Ms. Garcia states that Defendant Chairman Weems asked her "if all staff had to go, who would you keep," to which Ms. Garcia named Ms. Bellamy as a person she would keep. To the contrary, Defendant Weems says that Ms. Bellamy is one of the very people that

need to go, "**then he [Weems] demanded that I [Ms. Garcia] terminate …**

**Bellamy**.

32.

When Ms. Garcia essentially refused to terminate Ms. Bellamy, then,

Defendant Weems began harassing Ms. Garcia more. In fact, according to Ms.

Garcia, Defendant Weems told Ms. Garcia that she needed someone to assist her

with "things like this [terminating people]" and that "everyone needs a hatchet

man."

### F.  Ms. Bellamy continues to report Misuse of funds and other violations of rules to HUD

33.

On April 22, 2024 Ms. Bellamy contacted HUD, yet again, continuing to

report multiple violations, including misuse/misappropriation of funds

regarding P Andrew Patterson, the alleged General Counsel for HAFC; **Ms.**

**Bellamy reported to HUD** that fraud was occurring because Mr. Patterson was

forcing Ms. Bellamy to use funds from the Enterprise Account to pay for salaries

and items that represented a misuse/misappropriation of funds. For example,

Ms. Bellamy reported to HUD that she was being forced to pay police officers—

who personally knew HAFC Commissioners—out of the Enterprise Account, a

payment that is without questions unlawful. Further these officers had no

required contract with HAFC and did not go through the requires procurement

process. Defendant Weems, White and Duffy knew about this email prior to terminating Ms. Bellamy because Ms. Bellmay discussed these issue with the Board on multiple occasions.

34.

Another example of misuse of funds is the forced hire of City Councilwoman Karen Rene of City of East Point; notably, Defendant Chairman Weems was the attorney for City of East Point.  HAFC was forced to pay Karen Rene a salary of approximately seventy-five thousand dollars as a fulltime employee working part-time hours. Ms. Rene was terminated because regulations prohibited her employment with HAFC.

35.

That Chairman Weems and attorney Patterson engaged in such conduct comes as no surprise because attorney Patterson was receiving HAFC payments without a contract too (See Ex. 8, for letter describing the unlawfulness of Patterson working with HAFC without a contract); Moreover, Mr. Patterson was forcing unlawful pay outs while he had no required contract with HAFC because his contract actually expired in July 2023 and was never renewed through the mandated procurement process.

36.

Attorney Patterson had also been previously cited in 2017 for overbilling HAFC; moreover, Ms. Bellamy reported Mr. Patterson for currently double billing because he was billing for a development deal of which he was scheduled to get paid after the deal was complete: double dipping, unlawfully, and Ms. Bellamy reported to HUD Officials what she perceived as unlawful conduct.

37.

While knowing that Mr. Patterson's contract had expired and not been renewed, Defendant Weems nevertheless announced that Mr. Patterson was still working for HAFC and permitted Mr. Patterson to speak on behalf of HAFC with a known expired contract. This was reported to HUD officials.

1. **Ms. Bellmay contacted 11 alive news on May 9, 2024**.

38.

Ms. Bellamy went public with her concerns to 11 Alive news on May 9, 2024; these concern entailed misuse of funds, blackmail, retaliation against Ms. Bellamy, and much more.

2.    **Ms. Bellamy speaks before the Fulton County Commissioners on May 15, 2024—a day before her termination**

39.

On May 15, 2024 Ms. Bellamy attend a meeting of the Fulton County Board of Commissioners, where she once again spoke publicly on the unlawful conduct of the Defendants. And all Defendant knew about her report of unlawful conduct.

F.    **Ms. Bellamy had no Idea she was termination on May 16, 2024 because the HAFC Commissioners told everyone but her about her termination**

40.

On May 22, 2024, Ms. Bellamy wrote an email to attorney Patterson and Chairman Weems, inter alia, inquiring as to why her management team were asking her why she had been terminated. Ms. Bellamy responded by saying she had no idea she had been terminated. As she noted in her email, as of May 22, 2024 she had not been informed of any termination by the HAFC Commissioners. Ms. Bellamy did **not get her separation letter until June 28, 2024**, which is unlawful.

41.

Ms. Bellamy stated in that same email "If the Board of Commissioners can inform all staff in a staff meeting on 5/16/2024 that I was terminated, and then

send out emails to the property management teams that I was terminated, then

there is no excuse for not informing me."

## COUNT I
## VIOLATION OF THE GEORGIA WHISTLEBLOWER'S ACT
*(Against the Defendant Housing Authority of Fulton County)*

42.

Plaintiff now fully incorporates paragraphs 1 to 41 and any other facts this

Court deems relevant, as if fully stated herein to support all allegations made in

this Count.

43.

Based on the incorporated facts, Ms. Bellamy reported—per the Georgia

Whistleblower's Act-- violations of rules and regulations which pertained to

unlawful hiring and unlawful misuse/appropriation of funds. As an employee

who meets the definition of public employee under the Georgia Whistleblower's

Act, Ms. Bellamy has the protections afforded by the Georgia Whistleblower's

Act

44.

That established, and based on the incorporated facts, the Defendants

unlawfully retaliated against Ms. Bellamy by placing her first on Administrative

leave, and then by terminating her employment—because Ms. Bellamy disclosed

a violation of or noncompliance with a law, rule, regulation to either a supervisor

or a government agency by reporting Defendants (especially Defendant

Weems's) instances of harassment, discrimination, creating a hostile work environment, and engaging in unlawful and illegal employment practices.

45.

As a result of the Defendants' conduct, Ms. Bellamy has suffered loss of wages and benefits, loss of employment, and has suffered damage to her professional reputation and physical, mental, and emotional distress. Defendants' actions were the proximate cause of the harm suffered by Ms. Bellamy as alleged herein

## COUNT II
## 42 U.S.C. § 1983 — VIOLATION OF FIRST AMENDMENT RIGHTS AND RETALIATION FOR MS. BELLAMY'S FIRST AMENDMENT EXPRESSIONS
*(Against Defendants Weems, White, Duffy, and Board of Commissioners for the Housing Authority of Fulton County )*

46.

Plaintiff now fully incorporates paragraphs 1 to 41 and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

47.

At all times relevant to this Complaint, Ms. Bellamy had a right to be free from violations and deprivations of the constitutional rights secured by the law.

48.

Based on the incorporated facts to support this Count, Defendants unconstitutionally violated Ms. Bellamy's First Amendment rights by

terminating placing her on administrative leave and then terminating her for reporting Defendants' conduct to HUD, the Board of Commissioners for Fulton County, and other persons and agencies.

49.

Based on the incorporated facts to support this Count, adverse action and its contemplation in terms of termination of Ms. Bellamy came within hours, and days of her repeated expression of speech protected by the First Amendment of the U.S Constitution.

50.

As a result of Defendants' unlawful actions in retaliation for Ms. Bellamy expressing her First Amendment rights, Ms. Bellamy has suffered damages, including, but not limited to, the loss of his job, wages, employment-related benefits, emotional distress, inconvenience, humiliation, and other indignities.

51.

As a result of the Defendants' conduct, Ms. Bellamy is entitled to compensable damages permissible under controlling law.

## SPECIAL DAMAGES

52.

Based on the facts and assertions incorporated in this Complaint, Ms. Bellamy nis entitled to special damages in an amount no less than $100,000.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Bellamy respectfully prays and requests a trial by jury and judgment of this Honorable Court against Defendants as follows:

(a) The process issue and service be had on Defendants;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, on all matters this Court deem are matter of pure law, jointly and severally, for the injuries of Plaintiff. And that all other matters be resolved by a jury;

(c) That Plaintiff be awarded the equitable relief she seeks;

(d) Plaintiff recovers all costs of litigation, including reasonable attorney fees, compensatory damages, and special damages;

(e) That a jury trial be had on all issues so triable; and

(f) That this Court enter and award such other and further relief to which Plaintiff may be entitled as a matter of equity, or which the Court so determines to be just and proper.

Respectfully submitted this 2nd day of March 2025,

**/s/ MARIO WILLIAMS**
Mario Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**

5600 Roswell Road
Building C,  Suite 103
Sandy Springs, Georgia 30342
(404) 341-4434
mwilliams@hdrattorneys.com
***Counsel for Plaintiff***